## S13A1288. HERTZ v. BENNETT.
### (751 SE2d 90)

HUNSTEIN, Justice.

Probate Judge Andrew Bennett denied James Hertz's application for a license to carry a weapon under OCGA § 16-11-129 based on Hertz's 1994 nolo contendere plea to five felony charges in Florida. Hertz filed a complaint for mandamus in superior court, alleging the denial violated the state statute and his constitutional right to keep and bear arms. Denying mandamus, the superior court found that the probate judge followed the statutory requirements in denying Hertz's application and that this denial did not violate the federal or state constitutions. Because Hertz's nolo contendere plea makes him ineligible for a weapons carry license under Georgia law and the statute as applied to him does not violate the United States or Georgia Constitutions, we affirm.

When he was 18, Hertz entered a plea of nolo contendere in the Escambia County Circuit Court to three counts of aggravated assault with a deadly weapon, one count of shooting from a vehicle, and one count of possession of a short barrel weapon. He was sentenced to three years' probation and six months' community control, which he successfully completed. In September 2012, Hertz filed an application for a weapons carry license in Quitman County, Georgia. When asked whether he had ever been convicted of, or pled guilty or nolo contendere to, any felony offense, he answered "yes," a fact confirmed by a criminal background check. After his application was denied, Hertz filed a complaint for mandamus, seeking to compel the probate judge to issue a weapons carry license on the grounds that he was a law-abiding citizen and met all the requirements of OCGA § 16-11-129. Alternatively, Hertz alleged that the denial of the license violated his right to keep and bear arms under the Second Amendment of the United States Constitution and Article I, Section I, Paragraph VIII of the Georgia Constitution.

1. Hertz first contends that the superior court erred in finding him ineligible for a weapons carry license based on his nolo contendere plea. Because adjudication was withheld under Florida law, he argues that his nolo contendere plea in that state was the equivalent of first offender treatment under Georgia law, which he asserts would not disqualify him from obtaining a weapons carry license. See OCGA § 16-11-129 (b) (3).

To obtain the right to the extraordinary remedy of mandamus, the petitioner must show either a clear legal right to the relief sought or a gross abuse of discretion. *Dougherty County v. Webb*, 256 Ga. 474 (1) (350 SE2d 457) (1986). OCGA § 16-11-129 sets out the requirements for obtaining a state license to carry a weapon, whether openly

or concealed.[1] Among the ten exceptions that disqualify a person from obtaining a license is a felony conviction.

> (2) No weapons carry license shall be issued to:
>
> . . .
>
> > (B) Any person who has been convicted of a felony by a court of this state or any other state . . . and has not been pardoned for such felony by . . . the person or agency empowered to grant pardons under the constitution or laws of such state. . . .

OCGA § 16-11-129 (b) (2) (B). The term "convicted" is defined in the statute as "a plea of guilty or a finding of guilt by a court of competent jurisdiction or the acceptance of a plea of nolo contendere." Id. at (b) (1) (B). Under subsection (b) (3), persons who have successfully completed a first offender sentence for specified controlled substance offenses are not disqualified from obtaining a weapons carry license under certain circumstances.[2]

Applying the language of the licensing statute in this case, Hertz was disqualified from receiving a weapons carry license due to the acceptance of his nolo contendere plea in Florida. He indicated on his application that he had been convicted of, or pled guilty or nolo contendere to, a felony offense, and the probate judge received a Federal Bureau of Investigation report that confirmed Hertz's plea of nolo contendere to felony offenses in Florida. There is no evidence in the record that Hertz has been granted a pardon for his felony conviction. Cf. *Ferguson v. Perry*, 292 Ga. 666 (2) (740 SE2d 598) (2013) (convicted felon entitled to weapons license based on parole board's order removing legal disabilities and restoring his civil and

---

[1] The crime of carrying a concealed weapon was repealed in 2010. See Ga. L. 2010, p. 963, § 1-2 (revising OCGA § 16-11-126); 2010 Ga. Senate Journal, p. 4267, § 1-2 (final conference report showing deleted text).

[2] OCGA § 16-11-129 (b) (3) specifically provides:

> If first offender treatment without adjudication of guilt for a conviction contained in subparagraph (F) or (I) of paragraph (2) of this subsection was entered and such sentence was successfully completed and such person has not had any other conviction since the completion of such sentence and for at least five years immediately preceding the date of the application, he or she shall be eligible for a weapons carry license provided that no other license exception applies.

Subparagraph (F) deals with persons convicted of offenses "arising out of the unlawful manufacture or distribution of a controlled substance or other dangerous drug"; subparagraph (I) addresses persons convicted of a "misdemeanor involving the use or possession of a controlled substance" who has not been free of supervision for at least five years immediately preceding the application due to other specified convictions listed in subsection (b).

political rights). Even if Hertz's aggravated assault and other non-drug crimes had been resolved by first offender treatment in Georgia, he would not be eligible for a weapons carry license. The first offender provision in subsection (b) (3) does not extend to first offender treatment for any offense, but rather is limited to convictions of the controlled substance offenses listed in subparagraphs (F) and (I) of subsection (b) (2). Because Hertz has not shown that he had a clear legal right to the weapons carry license or that the probate judge committed a gross abuse of discretion in denying him a license under OCGA § 16-11-129, the superior court properly denied mandamus.

2. Hertz next argues that this denial of a weapons license violates his federal right to bear arms. This as-applied challenge is premised on his assertion that he is a law-abiding citizen who was never convicted of a crime because the Florida court withheld adjudication and did not find him guilty.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." This amendment guarantees the individual "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U. S. 570, 635 (128 SCt 2783, 171 LE2d 637) (2008); see *McDonald v. City of Chicago*, 561 U. S. 742 (130 SCt 3020, 177 LE2d 894) (2010) (holding that the Second Amendment applies to the states under the Fourteenth Amendment). In *Heller*, the Supreme Court struck down a District of Columbia law that prohibited citizens from possessing handguns in the home, determining that "banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family would fail constitutional muster" under any standard of scrutiny. Id. at 628-629 (citation and punctuation omitted). The Court stated, however, that the right is not unlimited. Id. at 595, 626.

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 626-627. The Court noted that this list of "presumptively lawful regulatory measures" is not exhaustive. Id. at 627, n. 26.

(a) In analyzing laws challenged under the Second Amendment, the federal circuit courts of appeal have generally adopted a two-step inquiry, considering first whether the challenged law imposes a

burden on conduct protected under the Second Amendment and then applying the appropriate level of scrutiny. See *National Rifle Assn. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F3d 185, 194 (5th Cir. 2012) (listing cases); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F3d 1244, 1260, n. 34 (11th Cir. 2012) ("[l]ike our sister circuits, we believe a two-step inquiry is appropriate"). When a law prohibits conduct included in the examples of "presumptively lawful regulatory measures," some courts have upheld the statute under the initial step of the inquiry. See, e.g., *United States v. White*, 593 F3d 1199 (11th Cir. 2010) (upholding statutory prohibition against the possession of firearms by persons convicted of misdemeanor domestic violence as a presumptively lawful prohibition on firearm possession). In particular, many courts have followed this approach in rejecting challenges by convicted felons to felon-in-possession bans. See, e.g., *Chardin v. Police Commissioner of Boston*, 989 NE2d 392, 402 (Mass. 2013) (statute that bars persons adjudicated delinquent for the commission of a felony from obtaining a license to carry firearms falls outside the scope of the Second Amendment); *State v. Craig*, 826 NW2d 789, 798 (Minn. 2013) (defendant who had prior felony conviction involving possession of a controlled substance is categorically unprotected by the Second Amendment); *Pohlabel v. State*, 268 P3d 1264, 1267 (Nev. 2012) (upholding state felon-in-possession ban because presumptive right of law-abiding citizens to use arms in the home in self-defense does not extend to felons).

For purposes of federal constitutional analysis, we assume that the Florida court's withholding of adjudication of guilt in Hertz's case means that Hertz was not convicted of a felony. Based on this assumption, we accept Hertz's argument that he falls within a class of persons who have rights protected under the Second Amendment.

(b) The Supreme Court did not specify in *Heller* or *McDonald* the level of scrutiny that courts should apply in evaluating conduct protected under the Second Amendment, other than to state that the rational basis test was not appropriate. *Heller*, 554 U. S. at 628 & n. 27. The appropriate level of scrutiny "depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *United States v. Chester*, 628 F3d 673, 682 (4th Cir. 2010). While a severe burden on the core right of armed self-defense in the home requires strong justification, " 'laws that merely regulate rather than restrict, and laws that do not implicate the central self-defense concern of the Second Amendment, may be more easily justified.' " Id. (citation omitted). In addition, when the person challenging the law is a "law-abiding, responsible citizen[ ] whose Second Amendment rights are entitled to full solicitude under *Heller*," a more rigorous showing is required, "if not quite strict scrutiny."

*Ezell v. City of Chicago*, 651 F3d 684, 708 (7th Cir. 2011) (citation and punctuation omitted) (adapting First Amendment doctrine to the Second Amendment context in determining the heightened standard of judicial review to apply to law banning all firing ranges in the city).

The law being challenged here does not involve the core Second Amendment right to possess a firearm for self-defense in one's home. Under OCGA § 16-11-126, Hertz has the right to possess a handgun inside his home, motor vehicle, or place of business without a weapons carry license.[3] Nor is the challenge being brought by a "law-abiding responsible citizen" entitled to the full protection of his Second Amendment rights. Given Hertz's criminal history and the fact that the statute does not implicate Hertz's right to possess a handgun in his own home, we conclude that intermediate scrutiny is the appropriate test to apply in evaluating the constitutionality of OCGA § 16-11-129. See *United States v. Masciandaro*, 638 F3d 458 (4th Cir. 2011) (concluding a lesser standard than strict scrutiny is appropriate in evaluating laws that burden the right to bear arms outside the home); *United States v. Marzzarella*, 614 F3d 85 (3d Cir. 2010) (adopting intermediate scrutiny to review ban on possession of unmarked firearms that did not affect possession of marked firearms); *Chester*, 628 F3d at 683-684 (applying intermediate scrutiny to domestic violence misdemeanant's claim that he was entitled to keep a weapon for self-defense in his home). See generally Stephen Kiehl, *In Search of a Standard: Gun Regulations after Heller and McDonald*, 70 Md. L. Rev. 1131, 1145 (2011) (a majority of courts announcing a standard of review since *Heller* have adopted an intermediate scrutiny test).

(c) An as-applied challenge "addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." *Harris v. Mexican Specialty Foods, Inc.*, 564 F3d 1301, 1308 (11th Cir. 2009) (citation and punctuation omitted). In applying intermediate scrutiny, courts "determine whether there is a reasonable fit between the law and an important government objective."

---

[3] OCGA § 16-11-126 (a) provides: "Any person who is not prohibited by law from possessing a handgun or long gun may have or carry on his or her person a weapon or long gun on his or her property or inside his or her home, motor vehicle, or place of business without a valid weapons carry license." Other provisions in OCGA § 16-11-126 set out the manner in which persons who may legally own a firearm may carry a handgun and long gun without a valid weapons carry license. See id. at (b) (long gun may be carried provided that it is carried openly when loaded), id. at (c) (handgun may be carried if enclosed in a case and unloaded), id. at (d) (handgun or long gun may be carried in a private passenger vehicle with permission of owner or lessor with certain exceptions), id. at (f) (handgun or long gun may be carried for hunting, fishing, or sport shooting with any necessary hunting or fishing license and permission of land owner).

*National Rifle Assn.*, 700 F3d at 207. Intermediate scrutiny requires "the asserted governmental end to be more than just legitimate, either significant, substantial, or important," and "the fit between the challenged regulation and the asserted objective [to] be reasonable, not perfect." *Marzzarella*, 614 F3d at 98 (citations and punctuation omitted).

These requirements are met here. OCGA § 16-11-129 regulates the ability of citizens to carry a weapon in public. The goal is to protect the safety of individuals who are in public places, which has been identified as a substantial government interest. See, e.g., *Masciandaro*, 638 F3d at 473. Indeed, the "legitimate and compelling state interest in protecting the community from crime cannot be doubted." *Schall v. Martin*, 467 U. S. 253, 264 (104 SCt 2403, 81 LE2d 207) (1984) (citation and punctuation omitted). In upholding a related statute prohibiting convicted felons from possessing a firearm, we explained that "the General Assembly sought to keep guns out of the hands of those individuals who by their prior conduct had demonstrated that they may not possess a firearm without being a threat to society." *Landers v. State*, 250 Ga. 501, 503 (3) (299 SE2d 707) (1983). A similar justification applies here to the state licensing statute.

The statute meets this public safety objective by banning the carrying of a handgun without a license only in public, not on one's property or inside one's home, and by limiting the disqualification to certain classes of people, including those who are younger than 21 years of age, mentally ill, or prior violators of the law. See OCGA § 16-11-129 (b) (2). Of particular relevance here, the statute makes ineligible persons who have previously been found by a court to have committed a felony or carried guns illegally. See id. at (B) (no weapons carry license shall be issued to persons convicted of felonies), id. at (H) (disqualifying persons convicted within the past five years of laws prohibiting the pointing of a gun or pistol at another, carrying a weapon without a license, or carrying a weapon or long arm in an unauthorized location).

Contrary to his contention, Hertz was not a law-abiding citizen without a criminal record at the time he applied for a weapons carry license. In 1994, Hertz appeared in open court and acknowledged that the State could prove that he had committed serious felonies involving firearms: aggravated assault with a deadly weapon, shooting a firearm from a vehicle, and possession of a short barrel weapon. Before the Florida court accepted his plea of nolo contendere, the trial judge had to determine that there was a factual basis for the plea and that Hertz was entering it voluntarily. See Fla. R. Crim. P. 3.172 (a). Given this criminal history, we hold that the probate judge did not violate Hertz's Second Amendment right to bear arms by denying his

application for a license to possess a weapon in public. Cf. *Nunn v. State*, 1 Ga. 243, 251 (1846) (upholding validity of state law prohibiting concealed weapons "as it does not deprive the citizen of his *natural* right of self-defence" but striking down provision banning citizens from carrying pistols openly as a violation of the constitutional right to bear arms under the Second Amendment). Therefore, we reject Hertz's as-applied challenge to OCGA § 16-11-129 under the Second Amendment.

3. Hertz also asserts that the licensing statute violates our state constitution. The Georgia Constitution provides that the "right of the people to keep and bear arms shall not be infringed, but the General Assembly shall have power to prescribe the manner in which arms may be borne." Ga. Const. Art. I, Sec. I, Par. VIII. We have previously interpreted this provision as permitting the State to regulate the right to carry weapons "to some extent" while disallowing a law that "under the name of regulation, amounts in effect, to a deprivation of the constitutional right." *Strickland v. State*, 137 Ga. 1, 7 (1) (72 SE 260) (1911); see also *Nunn*, 1 Ga. at 243 (statute conflicts with Second Amendment "so far as it cuts off the exercise of the right of the citizen altogether to *bear arms, or*, under the color of prescribing the *mode*, renders the right itself useless"). In *Strickland*, we held that a statute requiring a person to obtain a license before carrying a pistol or revolver about his person did not violate the state constitutional right to keep and bear arms.[4] See 137 Ga. at 11-12. Examining decisions from other states on the constitutionality of gun regulations, we found that they construed "the right to bear arms, like other rights of person and property . . . in connection with the general police power of the State, and as subject to legitimate regulation." See id. at 6. Turning to our own state decisions on the subject, this Court noted the broad language used in our 1846 decision in *Nunn v. State* "evidently . . . was never intended to hold that men, women, and children had some inherent right to keep and carry arms or weapons of every description, which could not be infringed by the legislature." See id. at 8. We concluded that our state licensing requirement was not "so arbitrary or unreasonable as to amount, in effect, to a prohibition of

---

[4] The challenged law, which was the State's first gun licensing statute, provided that it shall be unlawful for any person to have or carry about his person, in any county in the State of Georgia, any pistol or revolver without first taking out a license from the Ordinary of the respective counties in which the party resides, before such person shall be at liberty to carry around with him on his person, or to have in his manual possession outside of his own home or place of business, *provided* that nothing in this Act shall be construed to alter, affect or amend any laws now in force in this State relative to the carrying of concealed weapons on or about one's person. Ga. L. 1910, p. 134, § 1.

the right to bear arms, or an infringement of that right as protected by the constitution." Id. at 11. Since our decision in *Strickland,* we have rejected similar state constitutional challenges to laws regulating the possession of firearms. See *Landers v. State,* 250 Ga. at 503 (rejecting facial challenge under State Constitution to statute prohibiting a convicted felon from possessing a firearm); *Carson v. State,* 241 Ga. 622 (5) (a) (247 SE2d 68) (1978) (provision of Georgia Firearms and Weapons Act prohibiting the keeping and carrying of sawed-off shotguns does not violate state constitution); see also *Spencer v. State,* 286 Ga. 483 (5) (689 SE2d 823) (2010) (probation condition requiring defendant convicted of account fraud to refrain from possessing a firearm did not violate his constitutional right to bear arms).

Whether Hertz is considered a convicted felon as defined in the Georgia licensing statute or a citizen who has not been convicted of a felony is immaterial to his challenge under our state constitution. In *Landers,* we upheld the constitutionality of the state statute making it a crime for a convicted felon to possess a firearm,[5] see 250 Ga. at 503, consistent with other federal and state court decisions upholding felon-in-possession bans challenged under the Second Amendment. See, e.g., *United States v. Torres-Rosario,* 658 F3d 110, 113, n. 1 (1st Cir. 2011) (since *Heller,* all circuits facing the issue have rejected blanket challenges to felon-in-possession bans, listing cases); *Chardin,* 989 NE2d at 402 (Mass.); *Craig,* 826 NW2d at 798 (Minn.); *Pohlabel,* 268 P3d at 1268-1269 (Nev.). Likewise, our decision in *Strickland* upheld the licensing statute based on the recognized authority of the State to enact reasonable regulations under its general police power. See 137 Ga. at 11.

In entering his nolo contendere plea, Hertz acknowledged that he used an illegal weapon to commit forcible felonies that endangered the lives of other persons. Under these circumstances, we hold that denying him a license to carry a weapon outside his home, car, and place of business does not violate his state constitutional right to bear arms in Article I, Section I, Paragraph VIII of the Georgia Constitution. Therefore, this provision is constitutional as applied to him.

*Judgment affirmed. All the Justices concur.*

---

[5] Enacted in 1980, the challenged law provided that
[a]ny person who has been convicted of a felony by a court of this state or any of the several states, or of the United States including its territories, possessions, and dominions, or of any foreign nation and who receives, possesses, or transports any firearm shall be guilty of a felony and upon conviction shall be imprisoned for not less than one nor more than five years.
Ga. L. 1980, p. 1509, § 1 (now codified as amended at OCGA § 16-11-131 (b)).

BLACKWELL, Justice, concurring.

I concur fully in the opinion of the Court, but I write separately to share a couple of observations about our consideration of the constitutional guarantees of the right to keep and bear arms. First, the opinion of the Court says that the right of law-abiding citizens to keep firearms in their homes is a principal concern of the constitutional guarantees, and that is true enough. See *District of Columbia v. Heller*, 554 U. S. 570, 635 (128 SCt 2783, 171 LE2d 637) (2008). But no one should misunderstand the Court to suggest that the constitutional guarantees extend only as far as the home. To the contrary, the Court today applies intermediate scrutiny to OCGA § 16-11-129, and in so doing, it acknowledges that the constitutional guarantees secure a right to carry firearms in public places, even if that right might be more limited than the right to keep firearms in the home.

Second, our decision today is a limited one. James Hertz was charged with several violent felonies involving the use of a firearm, Fla. Stat. § 784.021 (1) (a), as well as a felony involving the unlawful possession of a firearm. Fla. Stat. § 790.221 (1). When he appeared in a Florida court to answer those charges, Hertz elected not to dispute the charges, and he instead entered a plea of nolo contendere, which the court accepted. And although the court did not enter a formal adjudication of guilt, Fla. Stat. § 948.01, it found a factual basis for the plea, Fla. R. Crim. P. 3.172 (a), and to the extent that Hertz did not acknowledge his guilt, it must have found sufficient evidence of his guilt. See *North Carolina v. Alford*, 400 U. S. 25, 37 (91 SCt 160, 27 LE2d 162) (1970). In these peculiar circumstances, the Court concludes that the State of Georgia may — consistent with the constitutional guarantees of the right to keep and bear arms — deny Hertz a license to carry firearms in a public place. With respect to the constitutional guarantees, the Court decides nothing more.

I am authorized to state that Presiding Justice Hines and Justice Nahmias join this concurrence.

DECIDED NOVEMBER 4, 2013.

*John R. Monroe*, for appellant.
*Chad R. Corlee, Berrien L. Sutton*, for appellee.
*Samuel S. Olens, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, Joseph J. Drolet, Senior Assistant Attorney General, Britt C. Grant, Assistant Attorney General, Nels S. D. Peterson, Solicitor-General*, amici curiae.