295 Ga. 29
FINAL COPY

S13A1566. NEWTON TIMBER COMPANY, L.L.L.P. et al. v.
MONROE COUNTY BOARD OF TAX ASSESSORS et al.

HINES, Presiding Justice.

This is an appeal by landowners from the Superior Court of Monroe County's denial and dismissal of their petition for a writ of mandamus and related adverse rulings involving their real property tax appeals. For the reasons that follow, we affirm.

The appellants include various entities and individual members of the Newton family (hereinafter "Newton Entities") who collectively own numerous parcels of land totaling thousands of acres in Monroe County. Beginning in 2008 and continuing each year through 2012, Newton Entities contested the tax assessments made by the Monroe County Board of Tax Assessors ("Board") for their properties, totaling more than 100 separate tax appeals. See OCGA § 48-5-299.[1] In 2008 and 2009, they filed notices of appeal to the Monroe County

---

[1] OCGA § 48-5-299 provides:

(a) It shall be the duty of the county board of tax assessors to investigate diligently and to inquire into the property owned in the county for the purpose of ascertaining what real and personal property is subject to taxation in the county and to require the proper return of the property for taxation. The board shall make such investigation as may be necessary to determine the value of any property upon which for any reason all taxes due

the state or the county have not been paid in full as required by law. In all cases where the full amount of taxes due the state or county has not been paid, the board shall assess against the owner, if known, and against the property, if the owner is not known, the full amount of taxes which has accrued and which may not have been paid at any time within the statute of limitations. In all cases where taxes are assessed against the owner of property, the board may proceed to assess the taxes against the owner of the property according to the best information obtainable; and such assessment, if otherwise lawful, shall constitute a valid lien against the property so assessed.

(b) (1) In all cases where unreturned property is assessed by the county board of tax assessors after the time provided by law for making tax returns has expired, the board shall add to the amount of state and county taxes due a penalty of 10 percent of the amount of the tax due or, if the principal sum of the tax so assessed is less than $10.00 in amount, a penalty of $1.00. The penalty provided in this subsection shall be collected by the tax collector or the tax commissioner and in all cases shall be paid into the county treasury and shall remain the property of the county.

(2) (A) The provisions of paragraph (1) of this subsection to the contrary notwithstanding, this paragraph shall apply with respect to counties having a population of 600,000 or more according to the United States decennial census of 1970 or any future such census.

(B) In all cases in which unreturned property is assessed by the board after the time provided by law for making tax returns has expired, the board shall add to the assessment of the property a penalty of 10 percent, which shall be included as a part of the taxable value for the year.

(c) Real property, the value of which was established by an appeal in any year, that has not been returned by the taxpayer at a different value during the next two successive years, may not be changed by the board of tax assessors during such two years for the sole purpose of changing the valuation established or decision rendered in an appeal to the board of equalization or superior court. In such cases, before changing such value or decision, the board of assessors shall first conduct an investigation into factors currently affecting the fair market value. The investigation necessary shall include, but not be limited to, a visual on-site inspection of the property to ascertain if there have been any additions, deletions, or improvements to such property or the occurrence of other factors that might affect the current fair market value. If a review to determine if there are any errors in the description and characterization of such property in the files and records of the board of tax assessors discloses any errors, such errors shall not be the sole sufficient basis for increasing the valuation during the two-year period.

(d) When real or personal property is located within a municipality whose boundaries extend into more than one county, it shall be the duty of each board of tax assessors of a county, wherein a portion of the municipality lies, to cooperatively investigate diligently into whether the valuation of such property is uniformly assessed with other properties located within the municipality but outside the county where such property is located. Such investigation shall include, but is not limited to, an analysis of

Board of Equalization ("BOE"), which heard the appeals in March 2010. See OCGA § 48-5-311 (e) (1) (A).[2] Not satisfied with the determinations of the BOE, Newton Entities appealed to the superior court in April 2010. See OCGA § 48-5-311 (g) (1).[3] They then appealed their 2010 and 2011 tax assessments to the

the assessment to sales ratio of properties that have recently sold within the municipality and a comparison of the average assessment level of such properties by the various counties wherein a portion of the municipality lies. The respective boards shall exchange such information as will facilitate this investigation and make any necessary adjustments to the assessment of the real and personal property that is located in their respective counties within the municipality to achieve a uniform assessment of such property throughout the municipality. Any uniformity adjustments pursuant to this subsection shall only apply to the assessment used for municipal ad valorem tax purposes within the applicable county.

[2] OCGA § 48-5-311 (e) (1) (A) provides:
    (1) (A) Any taxpayer or property owner as of the last date for filing an appeal may elect to file an appeal from an assessment by the county board of tax assessors to either:
    (i) The county board of equalization as to matters of taxability, uniformity of assessment, and value, and, for residents, as to denials of homestead exemptions pursuant to paragraph (2) of this subsection;
    (ii) An arbitrator as to matters of value pursuant to subsection (f) of this Code section; or
    (iii) A hearing officer as to matters of value and uniformity for a parcel of nonhomestead real property with a fair market value in excess of $1 million pursuant to subsection (e.1) of this Code section. . . .

[3] OCGA § 48-5-311 (g) (1) provides:
    The taxpayer or the county board of tax assessors may appeal decisions of the county board of equalization or hearing officer, as applicable, to the superior court of the county in which the property lies. By mutual written agreement, the taxpayer and the county board of tax assessors may waive an appeal to the county board of equalization and initiate an appeal under this subsection. A county board of tax assessors shall not appeal a decision of the county board of equalization or hearing officer, as applicable, changing an assessment by 20 percent or less unless the board of tax assessors gives the county governing authority a written notice of its intention to appeal, and, within ten days of receipt of the notice, the county governing authority by majority vote does not prohibit the appeal. In the case of a joint city-county board of tax assessors, such notice shall be

BOE, which appeals were heard in March 2012. Dissatisfied with these BOE decisions, Newton Entities again appealed to the superior court. They filed notices of appeal as to the 2012 tax assessments for certain parcels directly to the superior court in July 2012. Newton Entities did not pay the filing fees for the five years of tax appeals to the superior court.

In April 2011, Newton Entities submitted a Conservation Use Value Assessment application ("CUVA") for 18 different parcels. See OCGA § 48-5-7.[4] The number "2008" was handwritten on the top of each printed

---

given to the city and county governing authorities, either of which may prohibit the appeal by majority vote within the allowed period of time.

[4] OCGA § 48-5-7 provides:
(a) Except as otherwise provided in this Code section, taxable tangible property shall be assessed at 40 percent of its fair market value and shall be taxed on a levy made by each respective tax jurisdiction according to 40 percent of the property's fair market value.
(b) Tangible real property which is devoted to bona fide agricultural purposes as defined in this chapter and which otherwise conforms to the conditions and limitations imposed in this chapter shall be assessed for ad valorem property tax purposes at 75 percent of the value which other tangible real property is assessed and shall be taxed on a levy made by each respective tax jurisdiction according to said assessment.
(c) Tangible real property which qualifies as rehabilitated historic property pursuant to the provisions of Code Section 48-5-7.2 shall be assessed at 40 percent of its fair market value and shall be taxed on a levy made by each respective tax jurisdiction according to 40 percent of the property's fair market value. For the purposes of this subsection, the term "fair market value" shall mean the fair market value of rehabilitated historic property pursuant to the provisions of subparagraph (C) of paragraph (3) of Code Section 48-5-2.
(c.1) Tangible real property which qualifies as landmark historic property pursuant to the provisions of Code Section 48-5-7.3 shall be assessed at 40 percent of its fair market value and shall be taxed on a levy made by each respective tax jurisdiction

4

application.[5] All of these applications were approved in 2011 for a period to begin on January 1, 2011.

Over a year later, on October 2, 2012, Newton Entities filed a petition for a writ of mandamus against the Board, requesting, inter alia, two counts of

according to 40 percent of the property's fair market value. For the purposes of this subsection, the term "fair market value" shall mean the fair market value of landmark historic property pursuant to the provisions of subparagraph (D) of paragraph (3) of Code Section 48-5-2.

(c.2) Tangible real property which is devoted to bona fide conservation uses as defined in this chapter and which otherwise conforms to the conditions and limitations imposed in this chapter shall be assessed for property tax purposes at 40 percent of its current use value and shall be taxed on a levy made by each respective tax jurisdiction according to 40 percent of the property's current use value.

(c.3) Tangible real property located in a transitional developing area which is devoted to bona fide residential uses and which otherwise conforms to the conditions and limitations imposed in this chapter for bona fide residential transitional property shall be assessed for property tax purposes at 40 percent of its current use value and shall be taxed on a levy made by each respective tax jurisdiction according to 40 percent of the property's current use value.

(c.4) Tangible real property which qualifies as brownfield property pursuant to the provisions of Code Section 48-5-7.6 shall be assessed at 40 percent of its fair market value and shall be taxed on a levy made by each respective tax jurisdiction according to 40 percent of the property's fair market value. For the purposes of this subsection, the term "fair market value" shall mean the fair market value of brownfield property pursuant to the provisions of subparagraph (F) of paragraph (3) of Code Section 48-5-2.

(d) The requirement contained in this Code section that all tax jurisdictions assess taxable tangible property at 40 percent of fair market value shall not apply to any tax jurisdiction whose ratio of assessed value to fair market value exceeded 40 percent for the tax year 1971. No tax jurisdiction so exempted shall assess at a ratio of less than 40 percent except as necessary to effect the preferential assessment provided in subsection (b) of this Code section.

(e) Each notice of ad valorem taxes due sent to taxpayers of counties and municipalities shall include both the fair market value of the property of the taxpayer which is subject to taxation and the assessed value of the property after being reduced as provided by this Code section.

[5] This appears to have been an attempt to make each application, and thus the preferential tax treatment for each parcel of land, retroactive to tax year 2008.

specific relief.[6]  Count I stated:

> Pursuant to O.C.G.A. § 9-6-20 *et seq.,* Plaintiffs seek a writ of mandamus from the court compelling the [Board] to perform its official public duties, thereby requiring [the Board] to comply with O.C.G.A. § 48-5-311 (g) (2) and certify its appeals to the Monroe County Clerk of the Superior Court.

Count II stated:

> Pursuant to O.C.G.A. § 9-6-20 *et seq.,* Plaintiffs seek a writ of mandamus from the court compelling the [Board] to perform its official public duties, thereby requiring [the Board] to comply with O.C.G.A. § 48-5-7.4 (j) (1) and approve or deny the CUVA applications.

At a hearing before the superior court on December 12, 2012, Newton Entities argued, inter alia, that the Board had a duty to certify its appeals to the clerk of the superior court pursuant to OCGA § 48-5-311 (g) (2). The Board countered that Newton Entities had to pay the filing fees prior to certification of their tax appeals, and that they had failed to do so.  Following the hearing, Newton Entities offered to pay an amount in filing fees based upon combining the tax appeals for various of the parcels, resulting in a calculated number of appeals far

---

[6] The petition contained a third count in which Newton Entities asked for attorney fees pursuant to OCGA § 9-15-14.

fewer than the notices of appeal filed.[7]

On February 12, 2013, the superior court issued an order finding that the Board had certified the tax appeals to the superior court on December 17, 2012; therefore, Newton Entities' request for issuance of a writ of mandamus against the Board regarding the certifications had become moot.[8] It directed Newton Entities to pay $206 in court costs to the clerk of superior court, based upon "contiguous property on appeal [proceeding] with the same case number and filing fee," but "all other non-contiguous properties" generating "an additional filing fee of [$206]" to be paid within the time required by law or such an appeal would be subject to dismissal.

On March 19, 2013, Newton Entities filed in superior court a "motion for clarification and for issuance of mandamus nisi." Newton Entities alleged that as they had not been served by the Board with copies of the notices of appeal and

_____

[7] It appears that Newton Entities offered the Board $2,884 as payment for certifying the appeals, contending that each appeal to the superior court from a BOE decision regarding parcels, contiguous and non-contiguous, which had been consolidated for the purpose of the BOE hearing constituted a single civil action; thus, instead of in excess of 100 appeals with the consequent court costs for each, there would be costs only for 14 cases.

[8] The Board had asked that the petition for a writ of mandamus be dismissed for non-payment of filing fees and costs. In this same order, the superior court denied the request for dismissal as "premature," because of the delay in the certifications of the tax appeals.

7

civil action file numbers assigned to the appeals, they lacked the ability to ascertain whether their appeals had been certified. They further alleged that clarification regarding the filing fees was required because some of the appeals to the BOE had been consolidated for hearing and that the Board had not told them that receipt of the filing fees was a prerequisite to certifying the appeals; they asked the court to direct the Board to accept their $2,884 tender as payment in full of the filing fees or give guidance on "what other amount [was] more appropriate." Newton Entities also requested a "mandamus nisi" as to their CUVA applications, which they maintained were for 2008, and had not been approved or denied. On March 28, 2013, the Board moved for a protective order and an emergency stay of discovery pending a hearing on the protective order, asking that the county taxpayers not be put through the burden and expense of complying with the Newton Entities' voluminous discovery request inasmuch as their mandamus petition was no longer viable. On April 4, 2013, the superior court issued an order temporarily staying discovery pending a hearing on the filed motions.

A hearing was held on April 23, 2013, and on May 16, 2013, the superior court issued an "order denying petition for writ of mandamus" and an "order

regarding filing fees." In the mandamus order, the superior court denied Count I of the petition as the certification issue had already been ruled moot in its prior order. As to Count II involving the CUVA applications, the superior court found that a representative of Newton Entities was informed by the Board that it "could not give [them] CUVA beginning in 2008, because the applications were untimely since they were filed in 2011"; Newton Entities were asked if they wanted CUVA to apply to the 18 properties beginning on January 1, 2011, and they gave direction to proceed with the submitted applications for 2011; subsequently, the Board approved all 18 CUVA applications to begin on January 1, 2011, as instructed by Newton Entities; Newton Entities were sent 18 separate notices that the applications were approved; each notice stated that the requested tax reduction would begin on January 1, 2011; all 18 CUVA approvals were filed with the clerk of superior court and the filing fees were paid for by check from Newton Entities' representative; inasmuch as the CUVA is for a ten-year period beginning on a date certain and cannot have two start dates and there was only one CUVA application filed for each parcel, the approvals of CUVA beginning January 1, 2011 also constituted the denials of January 1, 2008 as a beginning

9

point for the special tax treatment; CUVA is a contract between the Board and the taxpayer; Newton Entities had been receiving benefits under the contract in the form of tax reduction for over two years; and Newton Entities are estopped to challenge the validity of the contract inasmuch as they have received benefit from it. The superior court concluded that there was no refusal to act by the Board; therefore, mandamus would not lie. All of Newton Entities' requests for relief were denied,[9] and the petition for a writ of mandamus was dismissed in its entirety.

As to the order regarding filing fees, the superior court found that although Newton Entities had filed 107 notices of appeal with the Board, they had tendered only enough money to pay for 27 appeals, therefore, the Board was "at a loss as to which 27 appeals to file"; taxpayers were required to pay filing fees to the clerk of the superior court *before* a civil action was filed; the filing fee for a civil case in the Superior Court of Monroe County was $206; the only method for combining parcels for the purpose of constituting a consolidated tax appeal is found in OCGA § 48-5-311 (e) (6) (C), and that such requirements were not

---

[9] Inasmuch as mandamus relief was denied, the superior court also denied Newton Entities' request for attorney fees in Count III.

met as to any two parcels; that at the BOE hearings for the 2008 and 2009 tax appeals there was no written request that the appeals be consolidated; each notice of appeal for 2008 and 2009 lists only one parcel; at the BOE hearings for the tax appeals for 2010 and 2011, Newton Entities orally requested to present an argument that would apply to all of the parcels but they were informed that though they would be allowed to do so, the appeals were not being consolidated into one appeal and the attorney for Newton Entities agreed that it was not possible to consolidate the appeals; there was no order from the BOE for the purpose of combining any appeals; as to 2008 through 2011, there was no documentary evidence that any two parcels were ever combined for the purposes of appeal; and inasmuch as the 2012 appeals went straight to superior court, the statute did not apply to combine the appeals into one civil action. The superior court concluded that Newton Entities were required to pay $206 for each parcel subject to a notice of appeal filed in superior court.

1. Newton Entities contend that the superior court erred in denying their request for a "Mandamus Absolute" by finding that the Board certified their property tax appeals. However, in order to have the right to the extraordinary

11

remedy of mandamus, a petitioner has to demonstrate either a clear legal right to the sought relief or a gross abuse of discretion. *Hertz v. Bennett*, 294 Ga. 62 (1) (751 SE2d 90) (2013). And, Newton Entities can demonstrate neither.

In *Fitzpatrick v. Madison County Bd. of Tax Assessors*, 292 Ga. 74 (734 SE2d 397) (2012), this Court expressly affirmed that "a taxpayer instigating an appeal from a county board of equalization to the superior court pursuant to OCGA § 48-5-311 (g) must first pay the filing fee of the superior court clerk." Id. at 76. Although Newton Entities acknowledge *Fitzpatrick,* they maintain that the holding is limited to *what* taxpayers must pay, but not *when* they must pay. But, both the circumstances of *Fitzpatrick* and the mandates of OCGA § 48-5-311 (g) (2) belie such argument.

The landowner taxpayers in *Fitzpatrick* were dissatisfied with the tax valuations of their properties by both the county board of tax assessors and county board of equalization, and subsequently, filed an appeal in superior court, but the board of tax assessors refused to certify the appeal to the superior court unless the taxpayers first paid the filing fee to the superior court clerk. The taxpayers then sought a declaratory judgment that they were not required to pay

12

the filing fee, but the superior court ruled that they were indeed responsible for paying the filing fee, resulting in the appeal to this Court. Thus, the circumstances made plain that payment of the appropriate filing fee is a prerequisite to further action in regard to a tax appeal to the superior court. And, such requirement is consistent with the statutory mandates applicable to certification of a tax appeal.

OCGA § 48-5-311 (g) (2) provides in relevant part that "[a]t the time of certification of the appeal, the county board of tax assessors shall serve the taxpayer and his or her attorney of record, if any, with a copy of the notice of appeal and with *the civil action file number assigned to the appeal*." (Emphasis supplied.) And, except in the situation of sworn indigence, a clerk of the superior court is not to file a civil case or proceeding until the required fee is paid. OCGA § 9-15-4 (a). Thus, a board of tax assessors' complete compliance with certification of a tax appeal becomes a matter of practical impossibility in the circumstance in which the required filing fee is not paid.[10]

---

[10] To the extent that *Fayette County Bd. of Tax Assessors v. Oddo*, 261 Ga. App. 707 (583 SE2d 537) (2003), holds that there is no requirement under OCGA § 48-5-311 (g) (2) that the clerk of the superior court receive its filing fee before a tax appeal is certified by the county board of tax assessors, it is hereby overruled. Compare *Fulton County Bd. of Tax Assessors v. Boyajian*

Newton Entities raise in mitigation the fact that they disputed the filing fees owed, again asserting the responsibility of costs for a number of "consolidated" tax appeals far less than their more than 100 notices of appeal to the superior court. But, there is no evidence of record which effectively contradicts the superior court's express determination that Newton Entities' appeals did not fit within the consolidation provision for contiguous properties found in OCGA § 48-5-311 (e) (6) (C).[11] Furthermore, the superior court in February 2013 had issued a directive in regard to the fees required to be filed.

It is undisputed that the tax appeals have been physically delivered to the superior court and that the superior court has ruled that such appeals have been certified to it. Thus, Newton Entities have received the sought relief regarding

_____

271 Ga. 881 (1) (525 SE2d 687) (2000), *Fulton County Board of Tax Assessors v. Jones*, 264 Ga. 828, 829 (452 SE2d 99) (1995), and similar cases which hold that a board of tax assessors has no discretion in the certification process in regard to potential procedural and other defects in the tax appeal which would require judicial determination.

[11]OCGA § 48-5-311 (e) (6) (C) states:
> If more than one contiguous property of a taxpayer is under appeal, the board of equalization shall, upon request of the taxpayer, consolidate all such appeals in one hearing and render separate decisions as to each parcel or item of property. Any appeal from such a consolidated board of equalization hearing to the superior court as provided in this subsection shall constitute a single civil action, and, unless the taxpayer specifically so indicates in his or her notice of appeal, shall apply to all such parcels or items of property.

certification, even though there is no evidence that prior to the filing of the present appeal to this Court, Newton Entities paid the ordered filing fees attendant to its tax appeals.[12]

2. As noted, Count II of Newton Entities' mandamus petition asked that the Board be directed to either approve or deny their CUVA applications. Newton Entities now state that the Board did implicitly deny them CUVA treatment for 2008, and instead, argues that the superior court erred in denying their mandamus request by finding that the Board had provided them the opportunity to appeal the denial of their 2008 CUVA applications.[13] Citing OCGA § 48-5-7.4 (j) (1),[14]

---

[12] Upon return of the remittitur in this case, the status of the filed tax appeals should be assessed in light of any non-payment of ordered fees.

[13] Newton Entities state that they "do not dispute the validity of this denial."

[14] OCGA § 48-5-7.4 (j) (1) provides:

> All applications for current use assessment under this Code section, including the covenant agreement required under this Code section, shall be filed on or before the last day for filing ad valorem tax returns in the county for the tax year for which such current use assessment is sought, except that in the case of property which is the subject of a reassessment by the board of tax assessors an application for current use assessment may be filed in conjunction with or in lieu of an appeal of the reassessment. An application for continuation of such current use assessment upon a change in ownership of all or a part of the qualified property shall be filed on or before the last date for filing tax returns in the year following the year in which the change in ownership occurred. Applications for current use assessment under this Code section shall be filed with the county board of tax assessors who shall approve or deny the application. If the application is approved on or after July 1, 1998, the county board of tax assessors shall file a copy of the approved application in the office of the clerk of the superior court in the county in which the

15

they urge that the superior court should have ordered the Board to provide the statutory notice of the right to appeal such denial. But, Newton Entities' argument is unavailing.

First, in their mandamus petition, Newton Entities did not ask for the relief now requested; therefore, it can hardly be found error for the superior court to fail to grant it. Second, it is plain that Newton Entities filed only one set of CUVA applications, and that they were filed in 2011; the very statutory provision upon which they now rely, OCGA § 48-5-7.4 (j) (1), would render any attempt to make those applications effective for 2008 untimely as a matter of law. Moreover, these applications were effective for 2011, and by consent of

---

eligible property is located. The clerk of the superior court shall file and index such application in the real property records maintained in the clerk's office. Applications approved prior to July 1, 1998, shall be filed and indexed in like manner without payment of any fee. If the application is not so recorded in the real property records, a transferee of the property affected shall not be bound by the covenant or subject to any penalty for its breach. The fee of the clerk of the superior court for recording such applications approved on or after July 1, 1998, shall be paid by the owner of the eligible property with the application for preferential treatment and shall be paid to the clerk by the board of tax assessors when the application is filed with the clerk. If the application is denied, the board of tax assessors shall notify the applicant in the same manner that notices of assessment are given pursuant to Code Section 48-5-306 and shall return any filing fees advanced by the owner. Appeals from the denial of an application by the board of tax assessors shall be made in the same manner that other property tax appeals are made pursuant to Code Section 48-5-311.

Newton Entities considered for that year. Further, all such CUVA applications were approved, so there was no question of notice of their denial or of refusal by the Board to act.

Simply, the superior court properly denied mandamus relief to Newton Entities. *Hertz v. Bennett*, 294 Ga. at 64 (1).

Judgments affirmed. All the Justices concur.

Decided March 10, 2014 – Reconsideration denied April 10, 2014.

Mandamus. Monroe Superior Court. Before Judge Fears.

G. Roger Land & Associates, G. Roger Land, Mitchell S. Graham, for appellants.

Dillon & Vaughn, Michael A. Dillon, Benjamin A. Vaughn, for appellees.