**FIRST DIVISION**
**PHIPPS, C. J.,**
**DOYLE, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 16, 2015

# In the Court of Appeals of Georgia

A15A0298. BALLARD et al. v. NEWTON COUNTY BOARD OF    BO-014
    TAX ASSESSORS.

BOGGS, Judge.

This appeal presents an issue of first impression: whether a tax sale qualifies

as an "arm's length, bona fide sale" under OCGA § 48-5-2. The trial court concluded

that it does not so qualify. We agree with the trial court and therefore affirm.

"The interpretation of a statute is a question of law. As such, we do not defer

to the trial court's ruling, and we apply the 'plain legal error' standard of review."

(Citations, punctuation and footnote omitted.) *Clayton County Bd. of Tax Assessors*

*v. City of Atlanta*, 299 Ga. App. 233, 234 (682 SE2d 328) (2009). The record reveals

that during various months in 2012, W.D. Ballard and Nancy Mock purchased 22

parcels of real property in Newton County at tax sales ("the property"). In April 2013,

the county tax assessors office sent Ballard and Mock assessments of the 2013 tax value of the property as outlined in its "Appraisal Procedure Manual." "The assessors did not set the 2013 value at the 2012 tax sale purchase price." Ballard and Mock appealed the property tax assessment, but the Board of Tax Assessors ("the Board") concluded that the value placed on the property represented "fair market value and uniformity."

Ballard and Mock appealed to the Newton County Board of Equalization ("the BOE"), which agreed with the valuation as determined by the tax assessor. They then appealed to the superior court, claiming that "the one-year purchase price cap established by OCGA § 48-5-2 (3) should apply" to the assessed value of the property. Following the filing of the parties' cross-motions for summary judgment, the trial court granted summary judgment to the Board.

The court concluded that because the purchaser at a tax sale does not receive fee simple title to the property and does not enjoy the right of possession or the right to collect rents if the right of redemption exists, the property owner has the right to redeem the property and divest the purchaser of any rights, and the owner of the property sold at a tax sale is not a participant in the sale, there is no arm's length, bona fide sale under OCGA § 48-5-2 (.1). Therefore, the trial court reasoned, the tax

2

sale does not qualify for the one-year purchase price freeze under OCGA § 48-5-2 (3). It is from this order that Ballard and Mock appeal.

"In interpreting statutes, our rules of statutory construction provide that the ordinary signification of words shall apply, 'except words of art or words connected with a particular trade or subject matter.' OCGA § 1-3-1 (b)." *Nat. City Mtg. Co. v. Tidwell*, 293 Ga. 697, 698 (1) (749 SE2d 730) (2013). OCGA § 48-5-2 (3) provides in part: "Notwithstanding any other provision of this chapter to the contrary, the transaction amount of the most recent *arm's length, bona fide sale* in any year shall be the maximum allowable fair market value for the next taxable year." (Emphasis supplied.) This amounts to a freeze on the ad valorem tax value of property for one year. See, e. g., *Columbus Bd. of Tax Assessors v. Yeoman*, 293 Ga. 107, 108 (1) (744 SE2d 18) (2013). For purposes of the Code Section, "'arm's length, bona fide sale' means a transaction which has occurred in good faith without fraud or deceit carried out by unrelated or unaffiliated parties, as by a willing buyer and a willing seller, each acting in his or her own self-interest, including but not limited to a distress sale, short sale, bank sale, or sale at public auction." OCGA § 48-5-2 (.1).

Ballard and Mock claim that even though OCGA § 48-5-2 (.1) does not specifically list tax sale as an example of an arm's length, bona fide sale, their tax sale

3

purchase is entitled to the one-year purchase price freeze set forth in OCGA § 48-5-2 (3), because it was an arm's length sale at public auction between unrelated parties, a willing buyer and a willing seller, each acting in their own self-interest. But "the cardinal rule in construing a legislative act, is to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose." (Citation punctuation and footnote omitted.) *Carringer v. Rodgers*, 276 Ga. 359, 363 (578 SE2d 841) (2003). "Moreover, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." (Citation, punctuation and footnote omitted.) *Maxwell v. State*, 282 Ga. 22, 23-24 (1) (644 SE2d 822) (2007). Therefore, as certain terms are not defined in OCGA § 48-5-2 (.1), such as "willing seller" and "transaction," and the examples listed, bank sale, distress sale, and short sale, are distinguishable from a tax sale as the former involve the sale of property by an owner, we look to the legislature's intent and the Georgia Tax Code as a whole.

OCGA § 48-5-1 provides: "The intent and purpose of the tax laws of this state are to have all property and subjects of taxation returned at the value which would be realized from the cash sale, but not the forced sale, of the property and subjects as

4

such property and subjects are usually sold except as otherwise provided in this chapter." And OCGA § 48-5-2 (3) provides that the "[f]air market value of property" from which to determine taxation "means the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale." Thus, the legislative intent is to place a value upon property that it would receive under a customary sale of property, not an atypical transaction. Foreclosure sales, for example, are forced sales "conducted under conditions that differ from the ordinary market for the property in question, [and] notoriously fail to bring the true market price of the property." *Georgia Ltd. Partners, LLC v. City Nat. Bank*, 323 Ga. App. 766, 767 (748 SE2d 131) (2013) (physical precedent only); *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261 (1) (424 SE2d 889) (1992). Accordingly, the legislature saw fit to remove consideration of foreclosure sales in a 2010 amendment to OCGA § 48-5-2 (3) (B) (iv) (criteria for tax assessor in determining fair market value of property).

> In Georgia, when property is sold for unpaid taxes, the tax sale purchaser obtains a deed to the property. This deed, however, does not provide the tax sale purchaser with absolute title to the property, but rather gives the purchaser a defeasible fee interest therein with the title remaining subject to encumbrance for at least one year after purchase due to other interested parties' statutory rights of redemption.

5

(Citations and punctuation omitted.) *Land USA, LLC v. Georgia Power Co.*, ___ Ga. ___ slip op. at 4-5 (1) (Case No. S15A0406; decided June 1, 2015); see also OCGA §§ 48-4-1 (tax sales generally), 48-4-2 (assessment); 48-4-6 (validity of deed). As previously outlined by the Georgia Supreme Court,

> after the tax sale, the delinquent taxpayer or any other party holding an interest in or lien on the property may redeem the property by paying to the tax sale purchaser the purchase price plus any taxes paid[1] and interest. If the property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale. This right of redemption, however, may be terminated by the tax sale purchaser anytime after one year following the tax sale. After that year has run, the tax sale purchaser may terminate, foreclose, divest, and forever bar all rights to redeem the property by giving notice under OCGA § 48-4-40, et seq., (the barment statutes) to all parties with redemption rights. The barment statutes apply to all persons having any right, title or interest in, or lien upon the subject property.

---

[1]"While it is true that the title which the tax deed purchaser acquires in consequence of a tax sale is not a perfect, fee-simple title, but is a defeasible title which terminates upon redemption within the time prescribed by statute, until redeemed, the tax deed purchaser acquires an interest in the property even during the time within which it might be redeemed, *which is sufficient to render him liable for taxes accruing upon the property*." (Citation and punctuation omitted; emphasis in original.) *Iglesia Del Dios Vivo Columna &c. v. Downing*, 321 Ga. App. 778, 781 (742 SE2d 742) (2013).

6

(Citations and punctuation omitted.) *Land USA*, supra, slip op. at 5 (1); see also OCGA §§ 48-4-40 (person entitled to redeem; time for redemption), 48-4-42 (amount payable for redemption), 48-4-43 (effect of redemption).

A tax sale is for the purpose of collecting unpaid taxes, see *Nat. Tax Funding, L.P. v. Harpagon Co.*, 277 Ga. 41, 42 (1) (586 SE2d 235) (2003), and would therefore be a forced sale similar to a foreclosure sale, not a sale under normal conditions. And what the tax sale purchaser receives is not fee simple title, but rather a *defeasable fee interest* evidenced by a tax deed. See *Brown Investment Group, LLC v. Mayor of Savannah*, 303 Ga. App. 885, 886 (695 SE2d 331) (2010) (tax sale conveys an inchoate or defeasible title subject to the right of the owner). "Fair market value of property" is defined as the amount a willing buyer would pay to purchase the property, and a willing seller would accept for the property, which implies the passing of title as the examples of bona fide sales listed in OCGA § 48-5-2 (.1) demonstrate. Because "fair market value of property" is not defined as the amount a buyer would pay to purchase, and willing seller would accept, for a *defeasable interest* in property, a tax sale does not qualify as an arm's length, bona fide sale such that the one-year freeze of OCGA § 48-5-2 (3) would apply. For this reason, the trial court did not err

7

in granting summary judgment to the Newton County Board of Tax Assessors, and in denying Ballard and Mock's cross-motion on this ground.

While Ballard and Mock also assert as error the trial court's ruling on the proper assessment of the fair market value, the court expressly limited its ruling to the issue of whether a tax sale is an arm's length, bona fide sale under OCGA § 48-5-2. The issue of the proper assessment therefore remains pending below.

*Judgment affirmed. Phipps, C. J. and Doyle, P. J., concur*.