**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 16, 2015**

# In the Court of Appeals of Georgia

A15A0280. SKELHORN v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Andrew Skelhorn was convicted of three counts of violating OCGA § 16-12-100.2, the Computer or Electronic Pornography and Child Exploitation Prevention Act of 2007. He appeals his convictions, arguing that the state failed to prove that he used a "computer on-line service" as alleged in the obscene Internet contact counts of the indictment. We find that the evidence was sufficient to prove that Skelhorn used an on-line messaging service, which the statute expressly includes in the list of examples of computer on-line services. Skelhorn argues that count one of the indictment, which charged him with using an Internet chat room to attempt to solicit, lure, and entice a child, was defective because it failed to allege the use of a computer on-line service. An Internet chat room is expressly

listed as a kind of computer on-line service, so the indictment was not defective. For this reason, we reject Skelhorn's argument that the trial court should have included the term "computer on-line service" when it instructed the jury on this count. We agree with Skelhorn that this count required proof that he took a substantial step toward committing the crime, but we find that the evidence was sufficient to allow a jury to find that he took a substantial step. Finally, Skelhorn argues that the trial court erred by denying his motion to suppress. By affirmatively stating that he had no objection to the admission of the evidence he sought to suppress, he has waived this argument. We therefore affirm the convictions.

1. *Evidence.*

The evidence, on appeal from a criminal conviction,

> must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Morris v. State*, 322 Ga. App. 682 (1) (746 SE2d 162) (2013) (citation omitted).

So viewed, the evidence showed that on August 12, 2010, an investigator with the Newton County Sheriff's Office entered a Yahoo! chat room called Georgia Romance. The investigator used the screen name "aimee_13cheer@yahoo.com." She was approached by Skelhorn, who was using the screen name "ukcru77 (Andrew Skelhorn)." Skelhorn told aimee_13 that he was feeling "a lil horney"[1] and asked if she had any pictures of herself or a webcam. When she said she did not, Skelhorn told her that he was "hard as a rock," that he had a webcam so she could see him if she wanted, and that he "like[d] to be seen."

Skelhorn sent aimee_13 a link inviting her to view the feed from his webcam. Aimee_13 accepted the invitation to start the webcam. The webcam showed a naked Skelhorn masturbating. The state introduced into evidence screen shots of the webcam display. Skelhorn continued to masturbate while he and aimee_13 were engaged in their Internet communication.

Skelhorn asked aimee_13 where she lived and asked her to take a picture of herself for him using her cell phone. He asked aimee_13 her age, and she said she was 13. He then asked her a series of crude, explicit questions about her physical

[1]We have quoted the communications between Skelhorn and aimee_13 exactly as they appear, including any spelling or other errors.

3

appearance, sexual preferences, and sexual experience, including whether her genitals were hairless, whether she liked penises, whether she engaged in fellatio, and whether she was a virgin. He asked aimee_13 what she was wearing, asked whether she ever had penetrated herself digitally and told her to "ddo iut now." Skelhorn asked aimee_13 whether she could fit his penis in her mouth, and then explained that he would ejaculate on her and then would perform cunnilingus on her. He asked aimee_13 to taste herself and describe the taste, explaining that he "wioll taaste mine 4 u" when he ejaculated, which was imminent.

Skelhorn then told aimee_13 that they "should meet one night." When she asked how, he said that he would "drive down there meet you at like a wendy. drive around. suck and lick." Skelhorn described in explicit detail the activity in which they would engage once they met. He asked aimee_13 if she wanted his telephone number, asked whether she would call him, and gave her his number. He concluded the communication by explaining that he would ejaculate "very soon" and asked "can u seee good." He then ejaculated and licked his finger.

Skelhorn sent aimee_13 a message on August 17, but the investigator was not on-line to receive it. Skelhorn contacted aimee_13 again on January 3, 2011 using Yahoo! Messenger. They connected, aimee_13 accepted his invitation to watch his

4

webcam feed, and again Skelhorn masturbated while displaying himself via webcam and chatting with aimee_13. The chat was sexually explicit, and Skelhorn described in detail what he would do to aimee_13. He also gave her his cell phone number again.

After these interactions, the investigator requested a copy of Skelhorn's driver's license from the Department of Driver Services, and the picture on the license matched the image of the man shown on the webcam. The driver's license gave an address in Cumming, Georgia, which is where Skelhorn had told aimee_13 he lived. A Forsyth County investigator drove by the residence, where he saw two vehicles that were registered to Skelhorn. The Newton County investigator obtained a search warrant for the residence and executed it. She also obtained a recorded statement from Skelhorn, which was played for the jury.

2. *Obscene Internet contact with a child.*

Skelhorn argues that use of a computer on-line service is an essential element of the crime of obscene Internet contact with a child, and that although the state alleged that element in the indictment for these counts, it failed to prove the allegation. We disagree.

The indictment charged Skelhorn with violating OCGA § 16-12-100.2 (e) by having sexually explicit verbal and visual contact with a person he believed to be a child "by way of an on-line messaging service provided by a computer on-line service." The statute in effect at the time of the offense provided:

> A person commits the offense of obscene Internet contact with a child if he or she has contact with someone he or she knows to be a child or with someone he or she believes to be a child *via a computer on-line service or Internet service, including but not limited to a local bulletin board service, Internet chat room, e-mail, or on-line messaging service*, and the contact involves any matter containing explicit verbal descriptions or narrative accounts of sexually explicit nudity, sexual conduct, sexual excitement, or sadomasochistic abuse that is intended to arouse or satisfy the sexual desire of either the child or the person, provided that no conviction shall be had for a violation of this subsection on the unsupported testimony of a child.

Former OCGA § 16-12-100.2 (e) (1) (emphasis supplied). (This subsection of the statute was amended effective July 1, 2013, among other things, to replace the phrase "computer on-line service" with "computer wireless service." See Ga. L. 2013, p. 663, § 3.)

Although the statute did not expressly define the term "computer on-line service," it gave specific examples of a computer on-line service in the following

6

clause, providing that a computer on-line service "includ[es] but [is] not limited to a local bulletin board service, Internet chat room, e-mail, or on-line messaging service." In other words, the statute defined computer on-line service by illustration. See generally *Berryhill v. Georgia Community Support & Solutions, Inc.*, 281 Ga. 439, 442 (638 SE2d 278) (2006) (legislature's use of phrase "includes but is not limited to" indicates an intent to broadly illustrate or enlarge). "[S]tatutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat the legislative purpose." *In the Interest of T. H.*, 258 Ga. App. 416, 420 (2) (574 SE2d 461) (2002).

With these principles in mind, we conclude that the statute lists an on-line messaging service as a specific type of computer on-line service, and that the legislature did not intend to establish both the use of a computer on-line service and the use of an on-line messaging service as essential elements that have to be separately proved in order to convict a defendant of obscene Internet contact with a child. Accordingly, the indictment charging Skelhorn with using an on-line messaging service encompassed that element of the crime. And the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Skelhorn used an on-line messaging service to contact a child with explicit

7

verbal and visual depictions of sexual conduct. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

3. *Use of a computer to attempt to lure.*

Skelhorn makes three arguments specific to count one of the indictment, which alleged that he "did willfully use an Internet chat room to attempt to solicit, lure, and entice [a named law enforcement officer], posing as aimee__13cheer@yahoo.com, a person believed by [Skelhorn] to be a 13 year old child, to engage in the act of aggravated child molestation by [Skelhorn] asking to meet said person for the purpose of [Skelhorn] to perform oral sodomy on said person . . ." in violation of OCGA § 16-12-100.2 (d) (1). Skelhorn argues that the state was required but failed to prove that he used a computer on-line service; that the trial court should have included the phrase "computer on-line service" in its charge to the jury on this count; and that the state failed to prove that he took a substantial step toward committing the crime. We reject these arguments.

(a) *Computer on-line service*

The version of the statute in effect at the time provided:

It shall be unlawful for any person intentionally or willfully to utilize *a computer on-line service or Internet service, including but not limited*

8

*to a local bulletin board service, Internet chat room, e-mail, on-line messaging service, or other electronic device*, to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child or another person believed by such person to be a child to commit any illegal act described in Code Section 16-6-2, relating to the offense of sodomy or aggravated sodomy; Code Section 16-6-4, relating to the offense of child molestation or aggravated child molestation; Code Section 16-6-5, relating to the offense of enticing a child for indecent purposes; or Code Section 16-6-8, relating to the offense of public indecency or to engage in any conduct that by its nature is an unlawful sexual offense against a child.

Former OCGA § 16-12-100.2 (d) (1) (emphasis supplied). (This subsection of the statute was amended effective July 1, 2013, among other things, to replace the phrase "computer on-line service" with "computer wireless service." See Ga. L. 2013, p. 663, § 3.) For the reasons discussed in Division 2, the state was not required to prove that Skelhorn used both a computer on-line service and an Internet chat room in order to convict him of violating former OCGA § 16-12-100.2 (d) (1), because the statute lists an Internet chat room as a specific kind of computer on-line service. Accordingly, use of a computer on-line service as something distinct from an Internet chat room is not an essential element of the crime and the trial court did not err by rejecting Skelhorn's request that the jury be instructed that the state had to prove his use of a computer on-

9

line service. See *Ganaway v. State*, 282 Ga. 297, 299 (2) (647 SE2d 590) (2007) (because intent to injure was not an element of the offense of aggravated assault with a deadly weapon, trial court did not err by failing to charge the jury that in order to convict, it had to find intent to injure). We observe that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Skelhorn used an Internet chat room. *Jackson*, supra, 443 U. S. at 319 (III) (B).

(b) *Substantial step*.

Contrary to the state's argument on appeal, we agree with Skelhorn that the state was required to prove that he took a substantial step toward committing the crime. Our Supreme Court has held that

> attempt within OCGA § 16-12-100.2 (d) (1) involves two elements: intent to commit a crime (in this case, intent to solicit[, lure, and entice] a [person he believed to be a] child for an unlawful sexual offense), and the taking of a substantial step toward the commission of that crime (in this case, a substantial step toward soliciting[, luring, and enticing] a [person he believed to be a] child for that unlawful offense).

*State v. Cosmo*, 295 Ga. 76, 78 (757 SE2d 819) (2014). But we find that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Skelhorn took a substantial step toward soliciting, luring and enticing a person

he believed to be a child for an unlawful sexual offense. *Jackson*, 443 U. S. at 319 (III) (B).

The statute does not define the synonymous terms "to solicit," "to lure," or "to entice," and "we therefore look to their plain and ordinary meaning as defined by dictionaries." *Mornay v. Natl. Union Fire Ins. Co. of Pittsburgh, PA*, 331 Ga. App. 112, 115 (3) (769 SE2d 807) (2015) (citation omitted). See also OCGA § 1-3-1 (b). In ordinary usage, the term "to solicit" means "[t]o seek to obtain by persuasion, entreaty, or formal application . . . [t]o commit the criminal offense of enticing or inciting (another) to commit an illegal act," American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=solicit, or "to ask for (something, such as money or help) from people, companies." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/solicit . The term "to lure" means "[t]o attract or entice, especially by wiles or temptation," American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=lure, or "to cause or persuade (a person or an animal) to go somewhere or to do something by offering some pleasure or gain." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/lure. Similarly, the term "to entice"

11

means "[t]o attract (someone), usually to do something, by arousing hope, interest, or desire," American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=entice, or "to attract (someone) especially by offering or showing something that is appealing, interesting, etc." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/entice. In light of these definitions, we conclude that the state presented sufficient evidence to authorize a jury to find Skelhorn "had engaged in substantial steps to establish criminal attempt of the crime charged." *Cosmo*, supra, 295 Ga. at 80 (citations omitted).

Skelhorn flattered aimee_13, telling her her breasts were "pwrfect," that he "love[d] small tits," and that it was "nice" that she was a virgin. He tried to arouse her desire, asking her to digitally penetrate herself and asking her if she was "wet." He suggested that he drive to Covington, where aimee_13 said she lived, so they could meet one night "at like a wendy." He described what they would do when he arrived in Covington: they would drive around, "suck and lick," he would try to prove that he could put his entire penis in her mouth – but he would "never" hurt her, he would perform cunnilingus on her, and he promised that he would "make [her] cum." He explained that they would engage in intercourse, and because she was a virgin, they

12

would go slowly and she would "ride" him because "that is the easiest way. [She would] control it then." Skelhorn gave aimee_13 his telephone number, asking her to call him.

"[T]he essence of the crime is the attempted enticement of someone the defendant believes to be a minor, not actual engagement in sexual activity with a minor." *United States v. Rothenberg*, 610 F3d 621, 626 (V) (11th Cir. 2010) (construing a federal statute that is substantially similar to OCGA § 16-12-100.2 (d) (1) (see *Cosmo*, 295 Ga. at 78)). "[T]he very nature of the underlying offense – [soliciting, luring,] or enticing engagement in unlawful sexual activity – necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense." *Rothenberg*, 610 F3d at 627 (V). A rational trier of fact was authorized to find that Skelhorn's chat with aimee_13 constituted an "important action [] leading to the commission of inducing [her] to engage in illegal sexual activity." Id. (punctuation omitted). See *Young v. State*, 327 Ga. App. 852, 856, (4) (a) (761 SE2d 801) (2014) (along with the requisite intent, the use of the computer constituted the actual violation of OCGA § 16-12-100.2 (d)).

We observe that although the state alleged in the indictment that one of the ways Skelhorn violated the statute was by asking to meet aimee_13, it also alleged

that he violated the statute by using an Internet chat room. "Because the statute requires proof of only one act which is a substantial step toward the commission of the crime, inclusion in the indictment of more than one such act is mere surplusage, which is unnecessary to constitute the offense, need not be proved, and may be disregarded." *Ranson v. State*, 198 Ga. App. 659, 661 (3) (a) (402 SE2d 740) (1991).

4. *Motion to suppress.*

Skelhorn argues that the trial court erred by denying his motion to suppress evidence seized during the execution of a search warrant. He has not preserved this issue for appellate review. When the state sought to introduce this evidence – photographs of Skelhorn's house and bedroom, and his laptop computer – his counsel affirmatively stated that he had no objection to its admission. Likewise, counsel stipulated to the admissibility of Skelhorn's statement taken at the time of the execution of the warrant. "In so doing, counsel waived any objection, including those raised in his motion to suppress." *Williams v. State*, 314 Ga. App. 840, 844 (4) (a) (726 SE2d 66) (2012) (citation omitted); see also *Dyer v. State*, 233 Ga. App. 770, 771 (505 SE2d 71) (1998) ("*[f]ailing* to object at trial is not a waiver of the motion to suppress grounds, but *affirmatively stating* there is no objection in effect concedes the point") (citations omitted; emphasis in original).

14

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur.*