**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 23, 2016**

# In the Court of Appeals of Georgia

A15A2136. PARK SOLUTIONS, LLC v. DEKALB COUNTY
BOARD OF TAX ASSESSORS.

MCFADDEN, Judge.

The issue in this appeal is whether a sheriff's sale of certain real property was an "arm's length, bona fide" sale under OCGA § 48-5-2 (3) so that the sale price constituted the property's maximum allowable fair market value for the next taxable year. Because we find that the sheriff's sale was such an arm's length, bona fide sale, the superior court's ruling to the contrary was erroneous and must be reversed.

On June 4, 2013, Park Solutions, LLC bought a tract of land for $25,000 at a sheriff's sale in DeKalb County. The sheriff's deed provided that Mollye Devault and Robert Christopher Taylor were the owners of the property; that the owners made the deed by and through the DeKalb County sheriff, acting in his official capacity; that

the sheriff conducted the sale to satisfy a default judgment of $37,796 obtained by DRST Holdings LTD; that the sale was held "at the usual place for conducting [s]heriff's sales in DeKalb [C]ounty before the [c]ourthouse door;" and that Park Solutions was the highest bidder at the "public outcry."

After the sale, the county appraised the value of the property as $146,900 for the 2014 tax year, and Park Solutions appealed that valuation to the DeKalb County Board of Tax Assessors. The board of tax assessors issued a decision finding that the fair market value of the property was $137,700. Park Solutions appealed that decision to the DeKalb County Board of Equalization, which upheld the county tax assessor's fair market value finding of the property as $137,700. Park Solutions then appealed to the superior court, asserting that pursuant to OCGA § 48-5-2 (3), the maximum allowable fair market value of the property for the 2014 tax year was the $25,000 price that it had paid at the sheriff's sale. The trial court rejected the argument, finding that the sheriff's sale was not an arm's length, bona fide sale under that statute because such "judicial foreclosure sales are not mentioned in the statute and also the parties to the sale are related and affiliated." The trial court concluded that the county had accurately determined the fair market value of the property as of January 1, 2014, to be $137,700. Park Solutions appeals from the superior court's final order.

1. *Sheriff's sale.*

Park Solutions asserts that the trial court erred in finding that the sheriff's sale in this case was not governed by OCGA § 48-5-2 (3) because such judicial foreclosure sales are not mentioned in the statute. We agree with the assertion.

OCGA § 48-5-2 (3), which is part of the code governing ad valorem taxation of property, provides, in pertinent part:

> "Fair market value of property" means the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale. . . . Notwithstanding any other provision of this chapter to the contrary, the transaction amount of the most recent arm's length, bona fide sale in any year shall be the maximum allowable fair market value for the next taxable year.

The term "arm's length, bona fide" sale as used in this code section is defined as "mean[ing] a transaction which has occurred in good faith without fraud or deceit carried out by unrelated or unaffiliated parties, as by a willing buyer and a willing seller, each acting in his or her own self-interest, *including but not limited to a distress sale, short sale, bank sale, or sale at public auction.*" OCGA § 48-5-2 (.1) (emphasis supplied).

Thus, OCGA § 48-5-2 (3) "provides the method for assessing [fair market] value as of [January 1 of the applicable tax year] . . ., with its focus on the actual

3

market-determined value of property on the actual date the property was acquired, rather than its value as much as a year later[.]" *Columbus Bd. of Tax Assessors v. Yeoman*, 293 Ga. 107, 109 (2) (744 SE2d 18) (2013). "This amounts to a freeze on the ad valorem tax value of property for one year. [Cit.]" *Ballard v. Newton County Bd. of Tax Assessors*, 332 Ga. App. 521, 522 (773 SE2d 780) (2015).

In finding that this freeze on the value of the property did not apply to the sheriff's sale in this case, the trial court relied on OCGA § 48-5-1, which provides that "[t]he intent and purpose of the tax laws of this state are to have all property and subjects of taxation returned at the value which would be realized from the cash sale, *but not the forced sale*, of the property and subjects as such property and subjects are usually sold except as otherwise provided in this chapter." (Emphasis supplied.) The trial court then reasoned that foreclosure sales are considered to be forced sales and therefore "[r]eading [OCGA] § 48-5-2 (.1) to include judicial foreclosure sales would be contrary to the expressed intent of Title 48 to exclude values realized as a result of the forced sale of a property."

However, the trial court overlooked the plain language in OCGA § 48-5-1 providing that it applies "except as otherwise provided in this chapter." Likewise, the controlling portion of OCGA § 48-5-2 (3) itself expressly provides that it applies

4

"[n]otwithstanding any other provision of this chapter to the contrary[.]" We must construe these statutes together and harmonize them to ascertain the legislative intent. *Aimwell, Inc. v. McLendon Enterprises*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012). In so doing, even if we assume, without deciding, that there is some inconsistency between them, it is apparent from the plain language of both code sections that, notwithstanding anything to the contrary, the legislative intent was to allow the specific provision of a one-year freeze on ad valorem tax value set forth in § 48-5-2 (3) to control over the general expression of purpose set forth in § 48-5-1. See *Hubert Properties, LLP v. Cobb County*, 318 Ga. App. 321, 323 (1) (733 SE2d 373) (2012) (specific statute will prevail over a general statute to resolve any inconsistency between them).

Moreover, the trial court also erred in concluding that the absence of the term "foreclosure sale" from OCGA § 48-5-2 (.1) indicates that such sales were excluded by the legislature from that code section's definition of an arm's length, bona fide sale. As recited above, OCGA § 48-5-2 (.1) defines an arm's length, bona fide sale as "*including but not limited to* a distress sale, short sale, bank sale, or sale at public auction." (Emphasis supplied.) Contrary to the trial court's interpretation of this code section, the legislature's use of the phrase "including but not limited to" is not

5

restrictive or exclusive, and instead "reflects broad language of illustration or enlargement. [Cit.]" *Hendry v. Hendry*, 292 Ga. 1, 2 (1), n. 2 (734 SE2d 46) (2012).

Indeed, two of the examples of the types of sales expressly included in the definition of an arm's length, bona fide sale set forth in OCGA § 48-5-2 (.1) - distress sales and public auctions - clearly include the foreclosure sale executed by the sheriff in this case. "The statute does not define the . . . terms ['distress sale' or 'public auction,'] and we therefore look to their plain and ordinary meanings as defined by dictionaries." *Skelhorn v. State*, 332 Ga. App. 782, 787 (3) (b) (773 SE2d 782) (2015) (citation and punctuation omitted). Black's Law Dictionary (10th ed. 2014), defines the term "distress sale" as "[a] form of liquidation in which the seller receives less for the goods than what would be received under normal sales conditions," and as a "foreclosure . . . sale." Under this ordinary meaning of the phrase, the sheriff's foreclosure sale in this case was a distress sale as contemplated by the statute.

Furthermore, Black's Law Dictionary (10th ed. 2014) defines the word "auction" as being "[a] public sale of property to the highest bidder," and it defines the term "public sale" as meaning "[a] sale made after public notice, as in an auction or sheriff's sale." Consistent with this dictionary definition, another statute in our official code provides that "the term 'public sale' means any sale, the notice of which

6

must by law in any manner be given to the public." OCGA § 9-13-160 (a). Thus, under these definitions, the sheriff's sale in this case was a public auction at which Park Solutions was the high bidder.

"OCGA § 48-5-2 (.1) expressly defines an arm's length, bona fide sale to include those types of transactions where the seller might suffer a financial loss[,] including distress sales . . . or sales at public auction[]." *CPF Investments v. Fulton County Bd. of Assessors*, 330 Ga. App. 744, 749 (769 SE2d 159) (2015) (punctuation omitted). Here, because the sheriff's sale of the subject property was a distress sale and public auction, it was an arm's length, bona fide sale under the plain terms of OCGA § 48-5-2 (.1). Consequently, the board of tax assessors could not "assess the property at a higher value in the year following the sale, regardless of whether the [b]oard believe[d] the sale price reflect[ed] the actual fair market value of the property." *CPF Investments*, supra at 747, n. 4. The trial court's findings to the contrary with regard to the sheriff's sale in this case were erroneous and must be reversed. Compare *Ballard*, supra at 525 (holding that a tax sale purchaser receives only a defeasible fee interest and since fair market value "is not defined as the amount a buyer would pay to purchase, and a willing seller accept, for a *defeasible interest*

7

in property, a tax sale does not qualify as an arm's length, bona fide sale such that the one-year freeze of OCGA § 48-5-2 (3) would apply.") (emphasis in original).

2. *Parties to the sale.*

The trial court also found that the sheriff's sale was not an arm's length transaction under OCGA § 48-5-2 (.1) because the parties to the 2013 sheriff's sale were DRST and Park Solutions and those parties were related in that the president of DRST and the manager of Park Solutions were, respectively, father and son. However, regardless of the relationship between the father and son and the respective corporate entities, the factual premise of the trial court's ruling is flawed because DRST was *not* a party to the sale.

As the sheriff's deed plainly shows, the parties to the sale were the sheriff as the grantor, acting in his official capacity on behalf of the property owners, and Park Solutions as the grantee after being the highest bidder for the property at the public auction. See *Associates Financial Svcs. Co. v. Johnson*, 128 Ga. App. 712, 713 (197 SE2d 764) (1973) (sheriffs who are legally authorized to make sales at a public outcry represent the sellers of the property). Thus, contrary to the trial court's finding, DRST simply was not a party to the sheriff's sale, which instead was an arm's length sale between the unrelated and unaffiliated parties of the grantor sheriff and the grantee

8

Park Solutions. Accordingly, the trial court's finding that the transaction was not an arm's length sale was erroneous. "In light of the foregoing [errors], the [final] order of the trial court . . . is reversed." *CPF Investments*, supra at 750.

*Judgment reversed. Ellington, P. J., concurs and Dillard, J., concurs in the judgment only.*

A15A2136. PARK SOLUTIONS, LLC v. DEKALB COUNTY BOARD OF TAX ASSESSORS.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As a result, the majority's opinion decides only the issues presented in the case sub judice and may not be cited as binding precedent. See Court of Appeals Rule 33 (a).