**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 3, 2020**

# In the Court of Appeals of Georgia

A20A1061. BELL v. HARGROVE.

BARNES, Presiding Judge.

Clinton Bell applied for a weapons carry license with DeKalb County Probate Judge Bedelia Hargrove. Based on information received during the ensuing investigation into Bell's background – specifically, that Bell had been arrested about 30 years prior on a charge of pointing a gun at another, Judge Hargrove denied Bell's application. Bell sought relief from the denial by filing a complaint for mandamus in superior court. On the parties' cross-motions for summary judgment, the superior court ruled in Judge Hargrove's favor. Bell appeals. For reasons explained below, we affirm.

The record shows the following. On February 13, 2018, Bell submitted to Judge Hargrove his sworn application in reliance upon OCGA § 16-11-129,[1] which "sets out the requirements for obtaining a state license to carry a weapon." *Hertz v. Bennett*, 294 Ga. 62, 62 (1) (751 SE2d 90) (2013). Under that statute's subsection (a),

> The judge of the probate court of each county *shall,* on application under oath, on payment of a fee of $30.00, and *on investigation of applicant pursuant to subsections (b) and (d) of this Code section, issue a weapons carry license* or renewal license valid for a period of five years to any person whose domicile is in that county or who is on active duty with the United States armed forces and who is not a domiciliary of this state but who either resides in that county or on a military reservation located in whole or in part in that county at the time of such application. Such license or renewal license shall authorize that person to carry any weapon in any county of this state notwithstanding any change in that person's county of residence or state of domicile. . . . *Applicants shall submit the application for a weapons carry license or renewal license to the judge of the probate court on forms prescribed and furnished free of charge to persons wishing to apply for the license or renewal license. . . . Forms shall be designed to elicit information from the applicant pertinent to his or her eligibility under this Code section, including citizenship*, but shall not require data which is nonpertinent or irrelevant, such as serial numbers or other identification capable of being used as a de facto registration of firearms owned by the

---

[1] This case concerns the 2018 version of OCGA § 16-11-129.

applicant. The Department of Public Safety shall furnish application forms and license forms required by this Code section. The forms shall be furnished to each judge of each probate court within this state at no cost.

(Emphasis supplied.) The referenced subsection (d), which provides for the investigation of the applicant and the issuance/renewal of the license, includes that:

(1) (a) For weapons carry license applications, the judge of the probate court shall within five business days following the receipt of the application or request direct the law enforcement agency to request a fingerprint based criminal history records check from the Georgia Crime Information Center and Federal Bureau of Investigation *for purposes of determining the suitability of the applicant and return an appropriate report to the judge of the probate court*.[2]

. . .

(2) . . . [T]he judge of the probate court shall within five business days following the receipt of the application or request *also* direct the law enforcement agency, in the same manner as provided for in subparagraph (B) of paragraph (1) of this subsection, to conduct a

_____

[2] OCGA § 16-11-129 (c) provides, in pertinent part, "Following completion of the application for a weapons carry license, the judge of the probate court shall require the applicant to proceed to an appropriate law enforcement agency in the county or to any vendor approved by the Georgia Bureau of Investigation for fingerprint submission services with the completed application so that such agency or vendor can capture the fingerprints of the applicant."

3

background check using the Federal Bureau of Investigation's National Instant Criminal Background Check System *and return an appropriate report to the probate judge*.

. . .

(4) The law enforcement agency shall report to the judge of the probate court within 20 days, by telephone and in writing, of *any findings relating to the applicant which may bear on his or her eligibility for a weapons carry license* or renewal license under the terms of this Code section. When no derogatory information is found on the applicant bearing on his or her eligibility to obtain a license or renewal license, a report shall not be required. The law enforcement agency shall return the application directly to the judge of the probate court within such time period. *Not later than ten days* after the judge of the probate court receives the report from the law enforcement agency concerning the suitability of the applicant for a license, the judge of the probate court *shall* issue such applicant a license or renewal license to carry any weapon *unless* facts establishing ineligibility have been reported or *unless* the judge determines such applicant has not met all the qualifications, is not of good moral character, or has failed to comply with any of the requirements contained in this Code section. The judge of the probate court shall date stamp the report from the law enforcement agency to show the date on which the report was received by the judge of the probate court. The judge of the probate court *shall not suspend the processing of the application or extend, delay, or avoid any time requirement provided for under this paragraph*.

(Emphasis supplied.)

The referenced subsection (b), among other things, identifies persons to whom "[n]o weapons carry license shall be issued," including "[a]ny person who has been convicted of a felony. . ."; "[a]ny person against whom proceedings are pending for any felony"; and "[a]ny person who is prohibited from possessing or shipping a firearm in interstate commerce pursuant to subsections (g) and (n) of 18 USC § 922." OCGA § 16-11-129 (b) (2) (B, C, E). Relevant here, 18 USC § 922 (g) states: "It shall be unlawful for any person . . . (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce"[3] (hereafter "Federal Provision"). See generally *United States v. White*, 593 F3d 1199, 1205-1206 (II) (C) 2) (11th Cir. 2010) (upholding statutory

---

[3] "[T]he term 'misdemeanor crime of domestic violence' means an offense that—(i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." (Footnote omitted.) 18 USC § 921 (a) (33) (A).

5

prohibition against the possession of firearms by persons convicted of misdemeanor domestic violence as a presumptively lawful prohibition on firearm possession), cited in *Hertz*, 294 Ga. at 65 (2) (a).

In this case, on February 14, 2018, which was the day after Bell submitted his application, Judge Hargrove received a background report from the law enforcement agency. Among other things, the report showed that Bell had been arrested as an adult on May 27, 1986 by the Atlanta Police Department for the "Misdemeanor" offense of "Pointing or Aiming Gun or Pistol at Another" under OCGA § 16-11-102.[4]

On April 11, 2018, which was 56 days after Judge Hargrove received the law enforcement agency's report, she rendered her decision by "ORDER DENYING APPLICATION FOR WEAPONS CARRY LICENSE" (hereinafter, "Order"). Therein, Judge Hargrove recounted, "The Applicant's sworn Application and criminal history information revealed . . . . [the May 27, 1986] Charge [of] Pointing or Aiming Gun or Pistol at Another (misdemeanor)." Judge Hargrove went on to state that the "Disposition" thereof was "Unknown"; and under a column labeled "Additional Information," Judge Hargrove set out: "Need proof of disposition, police report and

---

[4] OCGA § 16-11-102 provides in full, "A person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded."

6

probation successfully completed (possible domestic violence)." The probate judge further concluded,

> Based on the above, [Bell's] criminal history information is incomplete; therefore, the Court cannot determine whether the Applicant has met all the qualifications required under Georgia law and the Applicant is ineligible to receive a weapons carry license pursuant to the following provision(s) of law: . . . Federal Prohibitor[ ]: 18 USC § 922 . . . (g) (9) Any person who has been convicted of a misdemeanor crime of domestic violence. . . [and] Georgia Prohibitor[ ] OCGA § 16-11-129 . . . (b) (2) (E) Any person who is prohibited from possessing or shipping a firearm in interstate commerce pursuant to 18 USC §§ 922 (g) and (n). . . . . IT IS ORDERED that [Bell's] Application for a Weapons Carry License is hereby DENIED.

Seeking reprieve in the superior court, Bell relied on OCGA § 16-11-129 (j), which provides:

> When an *eligible* applicant fails to receive a license . . . within the time period required by this Code section and the application . . . has been properly filed, the applicant may bring an action in mandamus or other legal proceeding in order to obtain a license . . . . When an applicant is otherwise denied a license, . . . and contends that he or she is *qualified to be issued a license* . . . , the applicant may bring an action in mandamus or other legal proceeding in order to obtain such license. *Additionally*, the applicant may request a hearing *before the judge of the probate court* relative to the applicant's fitness to be issued such license.

7

. . . If such applicant is the prevailing party, he or she shall be entitled to recover his or her costs in such action, including reasonable attorney's fees.

(Emphasis supplied.) In his superior court action, Bell alleged that he had properly completed and submitted his application to Judge Hargrove, and that he was eligible to obtain a weapons carry licence pursuant to OCGA § 16-11-129. Moreover, Bell contended, the "maximum amount of time allowed by law for [the probate judge] to issue a [weapons carry license] to an eligible applicant is 10 days after receiving the criminal background check." Bell complained that Judge Hargrove had taken more than that allotted time period to process his application, and he claimed that the judge's (eventual, but untimely) denial of his application was without any legal basis. Bell thus sought from the superior court: (i) a writ of mandamus ordering the probate judge to issue him a weapons carry license; (ii) a writ of mandamus ordering Judge Hargrove to comply fully with the provisions of OCGA § 16-11-129 – in particular, its paragraph (d) (4); (iii) a declaration that Judge Hargrove "must process . . . applications [for weapons carry licenses] and issue [weapons carry] licenses within

8

35 days of the filing of [such] application[s]";[5] and (iv) costs and attorneys fees. See *Bordeaux v. Hise*, 355 Ga. App. 688, 689 (845 SE2d 408) (2020) ("OCGA § 16-11-129 (j) . . . sets forth the statutory procedures for applicants seeking relief in the event their application for a [weapons carry license] is denied[.]").

Answering Bell's complaint, Judge Hargrove admitted that she had denied Bell's application more than ten days after receiving from the law enforcement agency the results of Bell's background check. Nevertheless, she contended that Bell was not an "eligible" applicant for a weapons carry license, and consequently was entitled to no relief.

Judge Hargrove and Bell filed respective motions for summary judgment as to whether Bell was entitled to the relief he sought. In an affidavit presented by Bell, he stated,

> When I was arrested on May 27, 1986, I had used a handgun to defend myself from an aggressor. No charges were filed against me as a result of that arrest. The aggressor was not my current or former spouse, parent, or guardian, nor a person with whom I had a child, nor a person

[5] Bell reveals his calculation of 35 days as follows: upon receipt of a duly filed application, a probate judge has 5 days to order a background check from the law enforcement agency; next, the law enforcement agency has 20 days to report back to the probate judge; the probate judge then has 10 days to issue a weapons carry license.

9

with whom I was cohabiting or had cohabited, or any similar relationship.

(Paragraph numbers omitted.) The superior court conducted a hearing. Thereafter, the superior court granted Judge Hargrove's motion and denied Bell's.

Bell challenges those rulings in this appeal. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact *and* that the moving party is entitled to a judgment as a matter of law." (Emphasis supplied.) OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Matson v. Bayview Loan Servicing*, 339 Ga. App. 890, 890 (795 SE2d 195) (2016).

1. Bell contends that the superior court committed reversible error in ruling against him on the cross-motions, asserting that he had demonstrated entitlement to mandamus relief to obtain a weapons carry license.

Bell cites that the offense of pointing a gun at another, as defined by the Code section that underlay his arrest,[6] is not a felony that would invoke OCGA § 16-11-129 (b) (2) (B, C) (prohibiting the issuance of a weapons carry license to any person who

_____

[6] OCGA § 16-11-102.  See note 4, supra.

10

has been convicted of a felony and/or to any person against whom proceedings are pending for any felony). As Bell asserts, nothing in either the application he submitted or the background report provided by the law enforcement agency established that the incident underlying his arrest involved any delineated person(s) such that the incident amounted to domestic violence.[7] And even if there had been such a showing, Bell adds (while insisting that there was not and could not have been – relying on his affidavit that he filed in support of his motion for summary judgment[8]), nothing in the record established that he had been *convicted* of the misdemeanor crime for which he was arrested.[9] Rather, as Bell goes on to claim, his application had shown just the opposite. The pre-formatted "Application for Weapons Carry License" that he filled out, swore-to, and submitted to Judge Hargrove asked at Question 4:

---

[7] See note 3, supra.

[8] Bell also asserts that Judge Hargrove produced no evidence in the superior court contradicting his affidavit testimony that the alleged victim was not related to him.

[9] OCGA 16-11-129 (b) (1) (C) provides, "As used in this subsection, the term . . . '[c]onvicted' means an adjudication of guilt. Such term shall not include an order of discharge and exoneration pursuant to Article 3 of Chapter 8 of title 42."

11

Have you ever been convicted of, or pled guilty to, any misdemeanor crime involving the use or attempted use of physical force or threatened use of a deadly weapon towards (a) anyone as to whom at the time of the offense you were a current or former spouse, parent or guardian or similarly situated to a spouse, parent or guardian, (b) a person with whom you had a child in common, or (c) a person you lived with or had lived with as a spouse, parent or guardian or similarly situated to a spouse, parent or guardian, including but not limited to a girlfriend, boyfriend, step-child, foster child or ward?

The form then set out two check-boxes: (i) one marked, "Yes"; and (ii) the other marked, "No." Bell cites that he checked (only) the "No" box. Furthermore, Bell complains, the probate judge had taken far too long – 56 days – to render a decision; and during those 56 days, Bell continues, Judge Hargrove had taken no steps to obtain any additional information about his May 27, 1986 arrest.

Bell thus contends that Judge Hargrove's denial of his application and the superior court's summary judgment rulings conflict with plain language set out at OCGA 16-11-129 (d) (4):

*Not later than ten days after the judge of the probate court receives the report from the law enforcement agency concerning the suitability of the applicant for a license*, the judge of the probate court *shall* issue such applicant a license or renewal license to carry any weapon *unless* facts establishing ineligibility have been reported or *unless* the judge

12

determines such applicant has not met all the qualifications, is not of good moral character, or has failed to comply with any of the requirements contained in this Code section.

(Emphasis supplied.) Such language, as Bell characterizes that provision, establishes as the "default" the *issuance* of a weapons carry license (as opposed to the denial of same). Bell argues that Judge Hargrove's decision is wrong for the reason that it "denied [his] application because that arrest *might* have led to a conviction that was not reported to GCIC *and* because that non-existent conviction *might* qualify as a misdemeanor crime of violence . . . under [the Federal Provision]." (Emphasis in original.) Bell points out that OCGA § 16-11-129 (b) (2), which enumerates the factors that make an applicant ineligible for a weapons carry license, does not include the mere arrest on a misdemeanor charge of pointing a gun at another (in his case, "a stranger, with no relationship to him," according to his affidavit). Bell charges Judge Hargrove with thus substituting her own judgment for that of the legislature on matters of public policy. He urges that the federal and state constitutions guarantee

the right to keep and bear arms,[10] and that the decision to deny an applicant a weapons carry license "should not be taken lightly."

As detailed above, Judge Hargrove's denial of Bell's application was premised apparently on two grounds: (a) "[Bell's] criminal history information is incomplete; therefore, the Court cannot determine whether the Applicant has met all the qualifications required under Georgia law"; and (b) "the Applicant is ineligible to receive a weapons carry license pursuant to . . . [the Federal Provision] ."

We turn to the second of these grounds first. Nothing in the record before us constitutes facts establishing Bell's ineligibility pursuant to the Federal Provision. Notably, at this juncture, Judge Hargrove does not posit otherwise. Thus, to the extent that the superior court's summary judgment rulings were based on a determination that Bell was "ineligible to receive a weapons carry license pursuant to . . . the Federal Provision," such rulings cannot stand.

We turn to the other ground – "[Bell's] criminal history information is incomplete; therefore, the [probate judge] cannot determine whether the Applicant

_____

[10] See U.S. Const., amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."); Ga. Const. 1983, Art. I, Sec. I, Para. VIII ("The right of the people to keep and bear arms shall not be infringed, but the General Assembly shall have power to prescribe the manner in which arms may be borne.").

14

has met all the qualifications required under Georgia law[.]" Judge Hargrove summarizes in this appeal that the summary judgment rulings should be affirmed, maintaining that Bell's arrest for the offense of pointing a gun at another under OCGA § 16-11-102 "may have resulted in a conviction for a 'misdemeanor crime of domestic violence.'" She recites from *Hertz* that a goal of OCGA § 16-11-129 is "to protect the safety of individuals who are in public places, which has been identified as a substantial government interest." *Hertz*, 294 Ga. at 67 (2) (noting further that "OCGA § 16-11-129 regulates the ability of citizens to carry a weapon in public"). And she advances several arguments to support her position that a probate judge is authorized to deny a weapons carry license, where, as here, "questions remain regarding an applicant's entitlement to a license."

Judge Hargrove claims that Bell's criminal background – as reported by the law enforcement agency – was plainly incomplete, and that she had no duty to personally investigate his background. She points out that in her Order denying Bell's application, she identified the "Additional Information" that was needed, and advised Bell that he could file within 30 days a written motion for reconsideration.[11] Judge

_____

[11] Specifically, the Order advised,

If the Application has been denied due to inaccurate or incomplete

15

Hargrove cites that Bell filed no independent proof either of the facts underlying his arrest for pointing a gun at another or of the disposition of any ensuing case, and instead proceeded to superior court.

Although Judge Hargrove posits that Bell could have continued to pursue a weapons carry license before her, Georgia law did not require him to do so before "bring[ing] an action in mandamus or other legal proceeding in order to obtain [a weapons carry] license." OCGA § 16-11-129 (j). See *Bordeaux*, 355 Ga. App. at 689-690 (explaining that the appellant was not required to request a hearing with the probate judge before pursuing the extraordinary remedy of mandamus, given the plain language of OCGA § 16-11-129 (j), which gives denied applicants the option of requesting a hearing).

---

criminal history information . . . , the Applicant may file a written Motion for Reconsideration within thirty (30) days of the date of this Order. Along with the written Motion for Reconsideration, the Applicant shall provide the court with a certified copy of the final disposition for each charge identified above. If any of the charges may qualify as misdemeanor crimes of domestic violence, the Applicant shall also provide the Court with a certified copy of the police report related to the charges. The Applicant may submit any other proof to the court that the denial was issued in error or that his/her criminal history reports have been corrected. [NOTE: emails and/or faxes to the Court will not be accepted.]

Judge Hargrove's determination that "[Bell's] criminal history information is incomplete," however, finds support in *Meinken v. Burgess*, 262 Ga. 863 (426 SE2d 876) (1993). In that case, the Supreme Court of Georgia ascertained that an individual's arrest record maintained by the Georgia Crime Information Center ("GCIC") was properly deemed "incomplete" for purposes of OCGA § 35-3-37 (c),[12] where the record did not reflect the final disposition of his case. Id. at 864-867 (1) - (3). The *Meinkin* Court went on to explain how the GCIC's record could be remedied (including supplemented) – the *individual* could make a request to the original agency having custody or control of the detail records; then if necessary, the *individual* could appeal to the superior court. Id. at 864-865 (1).

At all times relevant here, Bell's criminal background report as provided from the law enforcement agency remained incomplete regarding the disposition of the gun charge at issue here. And we cannot agree with Bell that he was thus entitled by "default" to a weapons carry license. "The legislature, by enacting [OCGA § 16-11-129's] comprehensive statutory scheme, sought to protect the citizens of Georgia from a very wide range of potentially dangerous individuals." *Moore v. Cranford*, 285

---

[12] Although *Meinken* was decided when a different version of OCGA § 35-3-37 was in effect, the differences are not material to the issues raised in this appeal.

17

Ga. App. 666, 670 (1) (647 SE2d 295) (2007).[13] As detailed above, subsection (b) of that statute identifies individuals to whom "[n]o weapons carry license shall be issued," including persons who are prohibited from possessing a firearm pursuant to the Federal Provision; and subsection (d) sets out the manner by which an investigation into the applicant's criminal background shall be conducted, specifying the sources/entities from which such information shall be obtained for purposes of determining "the suitability of the applicant," and expressly contemplating the return of "an *appropriate* report to the judge of the probate court." (emphasis supplied).

Judge Hargrove was authorized to conclude that the report returned to her did not fall within the ambit of subsection (d), as it was incomplete for reasons discussed above. Bell cites that the preformatted application form inquired at Question 4 whether he had been convicted of "misdemeanor crime of domestic violence" for purposes of the Federal Provision, and that he gave a sworn answer, "No." While OCGA § 16-11-129 (a) allows application forms to "elicit information from the applicant pertinent to his or her eligibility under this Code section, including citizenship," that subsection nonetheless unambiguously conditions issuance of a

[13] Although OCGA § 16-11-129 was revised prior to the time Bell applied for a weapons carry license, the revisions are not pertinent for purposes here.

18

weapons carry license upon, among other things, a criminal background "investigation of [the] applicant *pursuant to subsections (b) and (d) of [OCGA § 16-11-129]*." (Emphasis supplied.)

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way.

*Ga. Assn. of Professional Process Servers v. Jackson*, 302 Ga. 309, 313-314 (2) (806 SE2d 550) (2017).

In light of the foregoing, Bell has not demonstrated that he was entitled to the extraordinary remedy of mandamus. "The writ of mandamus is properly issued only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citations and punctuation omitted.) *Ga. Assn. of Professional Process Servers*, 294 Ga. at 312 (2). Pretermitting the existence of the first requirement, we conclude that the superior court correctly found that Bell did not show a "clear legal right" to mandamus relief. With respect to this second requirement, our Supreme Court has explained,

19

[A] clear legal right to the relief sought may be found only where the claimant seeks to compel the performance of a public duty that an official or agency is required by law to perform. For mandamus to issue, the law must not only authorize the act to be done, but must require its performance. Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion. *The determination of whether official action is required depends on the law governing the subject matter in question. . . . Where the act required by law to be done involves the exercise of some degree of official discretion and judgment upon the part of the officer charged with its performance, the writ of mandamus may properly command him to act, or, as is otherwise expressed, may set him in motion; it will not further control or interfere with his action, nor will it direct him to act in any specific manner.*

(Citations and punctuation omitted; emphasis supplied.) Id. at 312-313 (2).[14]

Here, Judge Hargrove was required to make a threshold determination as to whether the report returned by the law enforcement agency constituted an appropriate

---

[14] See, e.g., *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 772 (4) (b), n.5 (815 SE2d 70) (2018) (noting circumstances under which a "party may also file a mandamus petition seeking to require the judge to fulfill his duty to provide a written order"); *Ricks v. State*, 303 Ga. 567, 568, n.2 (814 SE2d 318) (2018) (noting that "it may be appropriate for [a defendant] to file a petition for mandamus seeking to compel the clerk to perform his statutory duty [to transmit the notice of appeal and corresponding record to appellate court as required by OCGA § 5-6-43 (a)]").

report for purposes of OCGA § 16-11-129 (a), (b), (d). Given the circumstances here, Judge Hargrove was authorized to make the judgment call that it did not, and thus was not required to issue a weapons carry license to Bell. Bell's reliance upon OCGA § 16-11-129 (d) (4) is unavailing, because that statutory provision triggers the duty to issue a weapons carry license, if at all, only "after the judge of the probate court receives the [referenced] report from the law enforcement agency concerning the suitability of the applicant for a license." See generally *Ballard v. Newton County Bd. of Tax Assessors*, 332 Ga. App. 521, 523 (773 SE2d 780) (2015) ("[I]n construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.") (citation and punctuation omitted).

Because Bell has not demonstrated that he had a clear legal right to a weapons carry license, he has shown no reversible error in the superior court's summary judgment rulings against him and in favor of Judge Hargrove.[15] See generally *Ga. Assn. of Professional Process Servers*, 302 Ga. at 313-314 (2).

---

[15] We take this opportunity, however, to remind probate court judges that OCGA 16-11-129 (d) (4) dictates, "The judge of the probate court shall not suspend the processing of the application or extend, delay, or avoid any time requirement provided for under this paragraph."

2. Given our holding in Division 1, we do not reach the remainder of Bell's attacks upon the summary judgment rulings.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur*.